[Cite as *Smith v. Wyandot Mem. Hosp.*, 2018-Ohio-2441.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

KYRA V. SMITH, ADMINISTRATOR
OF THE ESTATE OF SHAWN SMITH,
DECEASED,

        CASE NO. 16-17-07

    PLAINTIFF-APPELLANT,

    v.

WYANDOT MEMORIAL HOSPITAL,       O P I N I O N
ET AL.,

    DEFENDANTS-APPELLEES.

---

Appeal from Wyandot County Common Pleas Court
Trial Court No. 17 CV 0065

Judgment Affirmed

Date of Decision: June 25, 2018

---

APPEARANCES:

    *William P. Campbell* for Appellant

    *Douglas G. Leak* for Appellee, Wyandot Memorial Hospital

    *Jeanne M. Mullin* for Appellee, Peter J. Schuler, M.D.

    *Frederick A. Sewards* for Appellees, Smith Clinic, et al.

    *Taylor C. Knight* for Appellees, Findlay Radiology Assoc., Inc., et al.

**PRESTON, J.**

{¶1} Plaintiff-appellant, Kyra V. Smith ("Kyra"), Administrator of the Estate of Shawn A. Smith ("Shawn") (collectively "Shawn's estate"), appeals the December 5, 2017 judgment of the Wyandot County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Wyandot Memorial Hospital ("Wyandot Hospital"), Findlay Radiology Associates, Inc. ("Findlay Radiology"), Young C. Choy, M.D. ("Dr. Choy"), and Peter J. Schuler, M.D. ("Dr. Schuler"), dismissing under Civ.R. 12(B)(6) Shawn's estate's complaint against defendants-appellees, Frederick C. Smith Clinic, Smith Clinic, and Roberto S. Concepcion, M.D. ("Dr. Concepcion"), and dismissing its complaint against Wyandot Specialty Healthcare (collectively "defendants"). We affirm.

{¶2} In a previous appeal, this court recited much of the factual and procedural background relevant to this case, and we will not duplicate those efforts here. *Smith v. Wyandot Mem. Hosp.*, 3d Dist. Wyandot No. 16-14-07, 2015-Ohio-1080. In sum, in that case, after Shawn was diagnosed with terminal cancer, Shawn, Kyra, and Shawn and Kyra's three children alleged medical negligence and loss of consortium claims against a number of the same parties named as defendants in this case. *Id.* at ¶ 3. After the claims against the other named defendants were dismissed, the trial court granted summary judgment in favor of Findlay Radiology and Dr. Choy after concluding that there was no genuine issue of material fact that Shawn,

Kyra, and Shawn and Kyra's three children filed their claims beyond Ohio's statute of repose under R.C. 2305.113(C). *Id.* at ¶ 6. *See also id.* at ¶ 1, fn. 1. This court affirmed the trial court's decision granting summary judgment in favor of Findlay Radiology and Dr. Choy. *Id.* at ¶ 19.

{¶3} Following that appeal, Shawn succumbed to his cancer on July 22, 2015. (Doc. No. 1). Kyra, Shawn's spouse, was appointed the administrator of Shawn's estate on September 24, 2015. (*Id.*).

{¶4} On July 21, 2017, Shawn's estate filed a wrongful-death action asserting a medical claim against Wyandot Hospital, Findlay Radiology, Dr. Choy, Dr. Schuler, Dr. Concepcion, OhioHealth Marion Area Physicians ("OhioHealth"), Wyandot Specialty Healthcare, Frederick C. Smith Clinic, and Smith Clinic. (Doc. No. 1).

{¶5} Dr. Choy and Findlay Radiology filed their answer on August 7, 2017. (Doc. No. 19). Dr. Concepcion, Smith Clinic, and Frederick C. Smith Clinic filed their answer on August 17, 2017. (Doc. No. 22). Wyandot Hospital filed its answer that same day. (Doc. No. 26). On August 21, 2017, OhioHealth filed its answer. (Doc. No. 29). After he was granted an extension of time to file his answer, Dr. Schuler filed his answer on September 7, 2017. (Doc. No. 36). (*See* Doc. Nos. 18, 30). Wyandot Specialty Healthcare failed to answer the complaint. (*See* Doc. No. 49).

{¶6} Also on August 17, 2017, Dr. Concepcion, Smith Clinic, and Frederick C. Smith Clinic filed a motion to dismiss Shawn's estate's complaint under Civ.R. 12(B)(6). (Doc. No. 24). On August 30, 2017, Shawn's estate filed a memorandum in opposition to Dr. Concepcion, Smith Clinic, and Frederick C. Smith Clinic's motion to dismiss. (Doc. No. 32). Dr. Concepcion, Smith Clinic, and Frederick C. Smith Clinic filed its reply to Shawn's estate's memorandum in opposition to their motion to dismiss. (Doc. No. 35).

{¶7} Wyandot Hospital filed a motion for summary judgment on September 14, 2017. (Doc. No. 37). Dr. Choy and Findlay Radiology filed a motion for summary judgment on October 5, 2017. (Doc. No. 40). On October 10, 2017, Dr. Schuler filed a motion for summary judgment. (Doc. No. 42). OhioHealth filed a motion for summary judgment on October 12, 2017. (Doc. No. 44).

{¶8} On October 19, 2017, Shawn's estate voluntarily dismissed its complaint against OhioHealth under Civ.R. 41(A)(1)(a). (Doc. No. 47).

{¶9} On October 23, 2017, Shawn's estate filed a memorandum in opposition to Dr. Choy and Findlay Radiology's, Dr. Schuler's, and Wyandot Hospital's motions for summary judgment. (Doc. No. 48).

{¶10} On December 5, 2017, the trial court granted Dr. Choy and Findlay Radiology's, Dr. Schuler's, and Wyandot Hospital's motions for summary judgment and Dr. Concepcion, Smith Clinic, and Frederick C. Smith Clinic's

motion to dismiss, and dismissed Shawn's estate's complaint against defendants. (Doc. No. 49). In its entry, the trial court also dismissed Shawn's estate's complaint against Wyandot Specialty Healthcare. (*See id.* at 3, fn. 1). In dismissing Shawn's estate's complaint, the trial court concluded that Shawn's estate's wrongful-death action asserted a medical claim and was barred by Ohio's medical-malpractice statute of repose.

{¶11} Shawn's estate filed its notice of appeal on December 20, 2017. (Doc. No. 50). It raises two assignments of error for our review.

**Assignment of Error No. I**

**The Trial Court Erred in Holding Plaintiff-Appellant's Wrongful Death Claim Was Barred by the Statute of Repose Set Forth in Ohio Revised Code §2305.113**

{¶12} In its first assignment of error, Shawn's estate argues that the trial court erred by dismissing its wrongful-death claim against Wyandot Hospital, Findlay Radiology, Dr. Choy, Dr. Schuler, Frederick C. Smith Clinic, Smith Clinic, and Dr. Concepcion after concluding that Ohio's medical-malpractice statute of repose bars Shawn's estate's wrongful-death action. Specifically, Shawn's estate argues that the trial court erred by applying Ohio's medical-malpractice statute of repose under R.C. 2305.113(C) to bar a wrongful-death action under R.C. 2125.01.

{¶13} Because the trial court dismissed Shawn's estate's wrongful-death action using two procedural vehicles—summary judgment and Civ.R. 12(B)(6)—

we must apply different standards to review the methods of dismissal. We review a decision to grant summary judgment and a judgment on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000); *Bd. of Health of Defiance Cty. v. McCalla*, 3d Dist. Defiance No. 4-12-07, 2012-Ohio-4107, ¶ 33, citing *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5. "Under de novo analysis, we are required to 'accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party.'" *McBroom v. Safford*, 10th Dist. Franklin No. 11AP-885, 2012-Ohio-1919, ¶ 9, quoting *Grey v. Walgreen Co.*, 8th Dist. Cuyahoga No. 96846, 2011-Ohio-6167, ¶ 3, citing *Byrd. v. Faber*, 57 Ohio St.3d 56 (1991).

**{¶14}** Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

**{¶15}** "A [Civ.R. 12(B)(6)] motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests whether the complaint is sufficient." *McCalla* at ¶ 33, citing *State ex rel. Hanson v. Guernsey Cty. Bd. of*

*Commrs.*, 65 Ohio St.3d 545, 548 (1992). "In order for a trial court to grant a motion to dismiss for failure to state a claim upon which relief can be granted, it must appear 'beyond doubt from the complaint that the plaintiff can prove no set of facts entitling her to relief.'" *McBroom* at ¶ 7, quoting *Grey* at ¶ 3, citing *LeRoy v. Allen, Yurasek & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, ¶ 14.

{¶16} The trial court dismissed Shawn's estate's wrongful-death action against Wyandot Hospital, Findlay Radiology, Dr. Choy, Dr. Schuler, Frederick C. Smith Clinic, Smith Clinic, and Dr. Concepcion after concluding that its claim is barred by Ohio's medical-claim statute of repose. Accordingly, we must determine whether Ohio's medical-claim statute of repose applies to wrongful-death actions under R.C. Chapter 2125.

{¶17} Under the rules of statutory interpretation, "'[t]he paramount goal in the interpretation or construction of a statute is to ascertain and give effect to the legislature's intent in enacting the statute.'" *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, ¶ 20, quoting *Brooks v. Ohio State Univ.*, 111 Ohio App.3d 342, 349 (10th Dist.1996). "To determine legislative intent, we must first examine the plain language of the statute." *Id.*, citing *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81 (1997). "'[W]e must apply a statute as it is written when its meaning is unambiguous and definite.'" *Id.*, quoting *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, ¶ 52, citing *State ex*

*rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545 (1996). "'An unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language * * *.'" *Id.*, quoting *Burrows* at 81.

{¶18} Applying the rules of statutory interpretation, the Supreme Court of Ohio has concluded that Ohio's medical-claim statute of repose "applies to a cause of action that ha[s] vested for an act or omission allegedly constituting medical malpractice that took place more than four years earlier." *Id.* at ¶ 1. The court further concluded that "the plain language of the statute is clear, unambiguous, and means what it says." *Id.* at ¶ 23. That is, "[i]f a lawsuit bringing a medical * * * claim is not commenced within four years after the occurrence of the act or omission constituting the basis for the claim, then *any* action on that claim is barred." (Emphasis added.) *Id.*

{¶19} Application of the rules of statutory interpretation to the issue presented by this case produces the same result. R.C. 2305.113(C), Ohio's medical-claim statute of repose, provides:

(C) Except * * * as provided in division (D) of this section, both of the following apply:

(1) No action upon a medical, dental, optometric, or chiropractic claim shall be commenced more than four years after the occurrence

of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim.

(2) If an action upon a medical, dental, optometric, or chiropractic claim is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim, then, any action upon that claim is barred.

{¶20} Addressing the constitutionality of Ohio's medical-claim statute of repose, the Supreme Court of Ohio concluded that R.C. 2305.113(C) is "a true statute of repose." *Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, ¶ 19. Unlike a statute of limitations which "establishes 'a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered),'" "[a] statute of repose bars 'any suit that is brought after a specified time since the defendant acted * * * even if this period ends before the plaintiff has suffered a resulting injury." *Antoon* at ¶ 11, quoting *Black's Law Dictionary* 1636 and 1637 (10th Ed.2014). Generally, statutes of limitations and repose have been favorably received by "courts and legislatures sharing the common beliefs that plaintiffs should litigate their claims as swiftly as possible and that defendants should not face potential liability indefinitely." *Id.* at ¶ 12. Indeed, the Supreme Court of Ohio historically has enforced such statutes. *See id.* at ¶ 17, quoting *Kerper*

*v. Wood*, 48 Ohio St. 613, 620 (1891); *Id.* at ¶ 17 ("It is not the province of the courts to make exceptions to meet cases not provided for by the legislature. It is no longer the habit of courts to view with disfavor the plea of the statutes of limitations. Being statutes of repose, designed to secure the peace of society, and protect the individual from being prosecuted upon stale claims, they are to be construed in the spirit of their enactment."), quoting *Townsend v. Eichelberger*, 51 Ohio St. 213, 216 (1894). Moreover, the court,

> like the United States Supreme Court, [has] respected the public policy choices embodied in statutes of repose:

> Many policy reasons support this legislation. Just as a plaintiff is entitled to a meaningful time and opportunity to pursue a claim, a defendant is entitled to a reasonable time after which he or she can be assured that a defense will not have to be mounted for actions occurring years before. The statute of repose exists to give medical providers certainty with respect to the time within which a claim can be brought and a time after which they may be free from the fear of litigation.

> Forcing medical providers to defend against medical claims that occurred 10, 20, or 50 years before presents a host of litigation concerns, including the risk that evidence is unavailable through the

death or unknown whereabouts of witnesses, the possibility that pertinent documents were not retained, the likelihood that evidence would be untrustworthy due to faded memories, the potential that technology may have changed to create a different and more stringent standard of care not applicable to the earlier time, the risk that the medical providers' financial circumstances may have changed—i.e., that practitioners have retired and no longer carry liability insurance, the possibility that a practitioner's insurer has become insolvent, and the risk that the institutional medical provider may have closed.

Responding to these concerns, the General Assembly made a policy decision to grant Ohio medical providers the right to be free from litigation based on alleged acts of medical negligence occurring outside a specified time period.

*Id.*, quoting *Ruther*, 134 Ohio St.3d 408, 2012-Ohio-5686, at ¶ 19-21.

{¶21} Re-codifying R.C. 2305.113, the General Assembly explained the purpose of the legislation. In its statement of findings and intent, the General Assembly discussed the distress posed to Ohio's health-care industry caused by growing medical-malpractice litigation. *See* S.B. 281, 2002 Ohio Laws File 250, Section 3(A)(1)-(3). Based on that concern, the General Assembly addressed the specific rationale behind the statute of repose:

(6)(a) That a statute of repose on medical, dental, optometric, and chiropractic claims strikes a rational balance between the rights of prospective claimants and the rights of hospitals and health care practitioners;

(b)   Over time, the availability of relevant evidence pertaining to an incident and the availability of witnesses knowledgeable with respect to the diagnosis, care, or treatment of a prospective claimant becomes problematic.

(c)   The maintenance of records and other documentation related to the delivery of medical services, for a period of time in excess of the time period presented in the statute of repose, presents an unacceptable burden to hospitals and health care practitioners.

(d)   Over time, the standards of care pertaining to various health care services may change dramatically due to advances being made in health care, science, and technology, thereby making it difficult for expert witnesses and triers of fact to discern the standard of care relevant to the point in time when the relevant health care services were delivered.

(e)   This legislation precludes unfair and unconstitutional aspects of state litigation but does not affect timely medical malpractice actions brought to redress legitimate grievances.

(f)   This legislation addresses the aspects of current division (B) of section 2305.11 of the Revised Code, the application of which was found by the Ohio Supreme Court to be unconstitutional in *Gaines v. Preterm-Cleveland, Inc.* (1987), 33 Ohio St.3d 54.  In *Dunn v. St. Francis Hospital, Inc.* (Del. 1982), 401 Atl.2d 77, the Delaware Supreme Court found the Delaware three-year statute of repose constitutional as not violative of the Delaware Constitution's open courts provision.

(B) In consideration of these findings, the General Assembly declares its intent to accomplish all of the following by the enactment of this act:

(1)   To stem the exodus of medical malpractice insurers from the Ohio market;

(2)   To increase the availability of medical malpractice insurance to Ohio's hospitals, physicians, and other health care practitioners, thus ensuring the availability of quality health care for the citizens of this state;

(3) To continue to hold negligent health care providers accountable for their actions;

(4) To preserve the right of patients to seek legal recourse for medical malpractice.

*Id.* at Section 3(A)(6), (B).

**{¶22}** Based on those principles, the Supreme Court of Ohio "and the United States Supreme Court agree that statutes of repose are to be read as enacted and not with an intent to circumvent legislatively imposed time limitations." *Antoon* at ¶ 19. For those reasons, we conclude that wrongful-death actions based on medical claims are barred by Ohio's medical-claim statute of repose for an act or omission allegedly constituting medical malpractice that took place more than four years earlier. The Supreme Court of Ohio stated that Ohio's medical-claim statute of repose clearly and unambiguously bars "*any* action" bringing a medical claim commenced more than four years after the occurrence of the act or omission constituting the basis for the claim. (Emphasis sic.) *Id.* at ¶ 23. Because *any action* bringing a medical claim is barred by Ohio's medical-claim statute of repose if it is not timely commenced, we conclude that wrongful-death actions fall within the scope of "any action" and are subject to the time restraints of the statute of repose.

**{¶23}** However, similar to the issue presented in *Daniel v. United States*, Shawn's estate argues that Ohio's medical-claim statute of repose does not apply to

wrongful-death actions because a wrongful-death action is subject to its own statute of limitations under R.C. 2125.02(D)(1). 977 F.Supp.2d 777, 780 (N.D.Ohio 2013). R.C. 2125.02(D)(1) "requires wrongful death claims to be commenced within two years of the date of decedent's death." *Id.*, citing R.C. 2125.02(D)(1).[1]

{¶24} In *Daniel*, the federal district court concluded that Ohio's statute of repose does not apply to wrongful-death actions. *Id.* at 781. The court, disagreeing with the Eighth District Court of Appeals' decision in *Fletcher v. Univ. Hosps. of Cleveland*, reasoned that Ohio's statute of repose does not apply to wrongful-death actions based on the Supreme Court of Ohio's "discussion of the relation of medical malpractice and wrongful death statutes of limitations." *Id.*, citing 172 Ohio App.3d 153, 2007-Ohio-2778, ¶ 8, *rev'd on other grounds*, 120 Ohio St.3d 167, 2008-Ohio-5379.

{¶25} We disagree with the court's reasoning. It is well-settled that "[s]tatutes of repose and statutes of limitation have distinct applications." *Antoon*, 148 Ohio St.3d 483, 2016-Ohio-7432, at ¶ 11, citing *CTS Corp. v. Waldburger*, ___ U.S. ___, 134 S.Ct. 2175, 2182 (2014). *See also York v. Hutchins*, 12th Dist. Butler No. CA2013-09-173, 2014-Ohio-988, ¶ 10 (discussing the applicability of Ohio's statute of repose to medical claims "regardless of the applicable statute of limitations"). Indeed, as we noted above, a statute of limitations relates to a

---

[1] It is undisputed that Shawn's estate filed its wrongful-death action within the time parameters established by R.C. 2125.02(D)(1).

-15-

plaintiff's ability to pursue a claim, while a statute of repose affords defendants certainty of "a time after which they may be free from the fear of litigation." *Ruther*, 134 Ohio St.3d 408, 2012-Ohio-5686, at ¶ 19.

{¶26} Moreover, based on the different motivations of a statute of limitations and a statute of repose, any argument asserting that Ohio's medical-claim statute of repose does not apply to wrongful-death actions because wrongful-death actions and medical-malpractice actions are separate causes of action is erroneous. Stated another way, a statute of limitations governs the time in which a plaintiff may assert a cause of action. A cause of action is based on a *plaintiff's* injury. Conversely, a statute of repose focuses on a *defendant's* alleged acts and governs the time in which a defendant may be held accountable for his or her alleged negligent acts. Based on that distinction, any separate-causes-of-action argument necessarily fails. Accordingly, because statutes of repose and limitation are fundamentally different, any reasoning based on the interplay of two statute of limitations is not persuasive. Thus, we decline to follow *Daniel*.

{¶27} Although it is not directly on point, our sister appellate district's decision in *Fletcher* is instructive to our analysis. In that case, the court concluded that Fletcher was required to file an affidavit of merit with respect to her wrongful-death action because it was based on a medical claim. *Fletcher*, 172 Ohio App.3d

153, 2007-Ohio-2778, at ¶ 8.[2] Applying the court's rationale that an affidavit of merit is required to support a wrongful-death action based on a medical claim, it reasons that the other statutory provisions applicable to medical claims, including Ohio's medical-claim statute of repose, also apply to wrongful-death actions. For the above reasons, we hold that Ohio's medical-claim statute of repose applies to wrongful death actions under R.C. Chapter 2125, which assert medical claims.

{¶28} Turning to Shawn's estate's wrongful-death action, we must determine whether it is based on a medical claim to determine whether Ohio's medical-claim statute of repose applies. A medical claim under R.C. 2305.113 is defined as

> any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic,

---

[2] Reversing the Eighth District Court of Appeals' decision for other reasons, the Supreme Court of Ohio specifically noted that the Eighth District's "ruling that [Fletcher's] wrongful-death claim requires an affidavit" of merit was not before the court because "Fletcher did not cross-appeal" that determination. *Fletcher v. Univ. Hosps. Of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, ¶ 9, fn. 2.

and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes the following:

(a) Derivative claims for relief that arise from the plan of care, medical diagnosis, or treatment of a person;

(b) Claims that arise out of the plan of care, medical diagnosis, or treatment of any person and to which either of the following applies:

(i) The claim results from acts or omissions in providing medical care.

(ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

(c) Claims that arise out of the plan of care, medical diagnosis, or treatment of any person and that are brought under section 3721.17 of the Revised Code;

(d) Claims that arise out of skilled nursing care or personal care services provided in a home pursuant to the plan of care, medical diagnosis, or treatment.

R.C. 2305.113(E)(3).

{¶29} Shawn's estate's complaint alleges that defendants "provided medical treatment and/or were responsible for supervising the medical treatment of Shawn

Smith." (Doc. No. 1). It further alleges that Wyandot Hospital, Findlay Radiology, Frederick C. Smith Clinic, and Smith Clinic are businesses that "held themselves out to the public * * * as competent and qualified to provide safe and adequate medical care and treatment," and that Dr. Choy, Dr. Schuler, and Dr. Concepcion are "practicing as medical doctors and held themselves out to the public * * * as competent and qualified to provide safe and adequate medical care and treatment." (*Id.*). Shawn's estate specifically alleged that "Defendants were negligent [by] failing to properly diagnose and treat Shawn A. Smith and failed to provide appropriate follow-up care to Shawn"; "Defendants took on the responsibility of caring and treating for [sic] Shawn Smith, but failed to make appropriate and differential decisions and failed to administer proper care and treatment to Shawn"; "[t]he care and treatment provided to Shawn A. Smith, by the Defendants, fell below acceptable standards of medical care and treatment and said Defendants were negligent"; and "Defendants negligently failed to use that degree of care, skill and diligence in providing Shawn A. Smith with proper and/or appropriate medical care and treatment ordinarily used by hospitals, physicians, and other medical personal in like and similar circumstances which ultimately caused the death of Shawn A. Smith." (*Id.*). Based on those allegations, Shawn's estate's wrongful-death action is based on a medical claim within the meaning of R.C. 2305.113(E)(3). *Compare Fletcher*, 172 Ohio App.3d 153, 2007-Ohio-2778, at ¶ 8 ("The wrongful-death claim

asserted by appellant was a medical claim as defined by R.C. 2305.113. It was a claim against a physician and a hospital that arose out of the medical diagnosis, care, or treatment of the decedent, and the claim resulted from alleged acts or omissions in providing medical care.").

{¶30} Moreover, as further evidence that Shawn's estate's wrongful-death action is based on a medical claim, Shawn's estate included with its complaint affidavits of merit as required by Civ.R. 10(D)(2). (Doc. No. 1, Exs. A, B). *See, e.g.*, *Fletcher* at ¶ 8. Therefore, Shawn's estate's wrongful-death action asserts a medical claim. As such, based on our conclusion above, it is subject to Ohio's medical-claim statute of repose.

{¶31} Under Ohio's medical-malpractice statute of repose, "'"a person must file a medical claim no later than four years after the alleged act of malpractice occurs or the claim will be barred."'" *Smith*, 2015-Ohio-1080, at ¶ 9, quoting *York*, 2014-Ohio-988, at ¶ 10, quoting *Ruther*, 134 Ohio St.3d 408, 2012-Ohio-5686, at ¶ 2 ("The statute establishes a period beyond which medical claims may not be brought even if the injury giving rise to the claim does not accrue because it is undiscovered until after the period has ended."). There is no dispute that defendants' alleged acts of medical malpractice occurred in 2004. Because Shawn's estate filed its wrongful death action in 2017, it is well outside the four-year statute of repose. *Compare York* at ¶ 11 (concluding that the trial court did not err by

dismissing the Yorks' medical claims filed "nearly a decade" after the alleged medical negligence "regardless of when the Yorks' claims actually accrued").

{¶32} For the foregoing reasons, there is no genuine issue of material fact that Shawn's estate filed its wrongful-death action well outside Ohio's medical-claim statute of repose. As such, the trial court did not err in granting summary judgment in favor of Dr. Choy, Findlay Radiology, Wyandot Hospital, and Dr. Shuler.[3] Moreover, the trial court did not err by dismissing Shawn's estate's wrongful-death action against Frederick C. Smith Clinic, Smith Clinic, and Dr. Concepcion for failing to state a claim for which relief can be granted since the wrongful-death action was filed well outside the four-year statute of repose.

{¶33} Shawn's estate's first assignment of error is overruled.

### Assignment of Error No. II

**The Trial Court Erred by Dismissing, Sua Sponte, a Non-Moving Defendant Where Appellant Was Provided No Notice or No Opportunity to Oppose the Dismissal**

{¶34} In its second assignment of error, Shawn's estate argues that the trial court erred by dismissing its complaint against Wyandot Specialty Healthcare without providing Shawn's estate notice and an opportunity to respond.[4]

---

[3] Based on our conclusion that summary judgment was proper in favor of Dr. Choy and Findlay Radiology, we need not and do not express an opinion as to whether Shawn's estate was precluded from pursuing any part of its wrongful-death action against Dr. Choy and Findlay Radiology based on this court's conclusion in *Smith v. Wyandot Mem. Hosp.* 3d Dist. Wyandot No. 16-14-07, 2015-Ohio-1080.

[4] Wyandot Specialty Healthcare failed to file an appellee's brief in this appeal. Under those circumstances, App.R. 18(C) provides that we "may accept the appellant's statement of the facts and issues as correct and

-21-

Case No. 16-17-07

{¶35} Civ.R. 41(B) governs involuntary dismissals of civil actions. Under Civ.R. 41(B)(1), "Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court * * * on its own motion may, after notice to the plaintiff's counsel, dismiss an action or claim." "A dismissal under division (B) of this rule and any dismissal not provided for in this rule * * * operates as an adjudication upon the merits * * *." Civ.R. 41(B)(3).

{¶36} We review an involuntary dismissal with prejudice for an abuse of discretion. *See Cecil & Geiser, L.L.P. v. Plymale*, 196 Ohio App.3d 322, 2011-Ohio-5468, ¶ 25 (10th Dist.) (noting that a dismissal under Civ.R. 41(B)(3) is discretionary). *See also Clay v. Lakeview Farms, Inc.*, 3d Dist. Allen No. 1-09-55, 2010-Ohio-603, ¶ 19. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶37} Although Wyandot Specialty Healthcare did not appear or move for dismissal, the trial court dismissed Shawn's estate's wrongful-death action against Wyandot Specialty Healthcare. The trial court dismissed Shawn's estate's wrongful-death action without notifying Shawn's estate that it intended to dismiss its complaint against Wyandot Specialty Healthcare and providing Shawn's estate an opportunity to respond.

---

reverse the judgment if appellant's brief reasonably appears to sustain such action." *Heilman v. Heilman*, 3d Dist. Hardin No. 6-12-08, 2012-Ohio-5133, ¶ 16.

**{¶38}** The Supreme Court of Ohio has concluded "that the notice requirement of Civ.R. 41(B)(1) applies to *all* dismissals with prejudice." (Emphasis sic.) *Ohio Furniture Co. v. Mindala*, 22 Ohio St.3d 99, 101 (1986). *See also Cecil & Geiser, L.L.P.* at ¶ 24 (noting that "when a party has been informed that dismissal is a possibility, it must be given a reasonable opportunity to defend against dismissal"), citing *Quonset Hut, Inc. v. Ford Motor Co.*, 80 Ohio St.3d 46, 49 (1997). "This requirement stems from and reflects a basic tenet of Ohio jurisprudence that cases should be decided on their merits." *Cecil & Geiser, L.L.P* at ¶ 23. "What constitutes notice and an opportunity to respond must be examined on a case-by-case basis." *Id.* at ¶ 24. "Notice needs to be formal but can be implied." *Id.*, citing *Sazima v. Chalko*, 86 Ohio St.3d 151, 155-156 (1999).

**{¶39}** Unlike involuntary dismissals that are fundamentally unfair to litigants, the trial court did not abuse its discretion by involuntarily dismissing Shawn's estate's wrongful-death action against Wyandot Specialty Healthcare. Based on the specific facts and circumstances of this case, Shawn's estate was not prejudiced by the dismissal of its wrongful-death action. *See id.* at ¶ 33 (discussing whether Cecil & Geiser was prejudiced by the involuntary dismissal without notice of its claims). In involuntarily dismissing Shawn's estate's complaint against Wyandot Specialty Healthcare, the trial court stated,

Case No. 16-17-07

> According to Plaintiff's Complaint, this entity had either an agency relationship with one of the named physicians or was the employer of one of the named physicians. Because the named physicians have all been dismissed by virtue of this order, the claims against this entity will be similarly dismissed.

(Doc. No. 49). Shawn's estate's wrongful-death action against Wyandot Hospital, Findlay Radiology, Dr. Choy, Dr. Schuler, Frederick C. Smith Clinic, Smith Clinic, and Dr. Concepcion were dismissed for the same reason—the claims were barred by Ohio's medical-claim statute of repose. Shawn's estate's wrongful-death action against Wyandot Specialty Healthcare would have likewise been dismissed as being barred by Ohio's medical-claim statute of repose had Wyandot Specialty Healthcare appeared and moved for dismissal. Stated differently, this is not a case in which Shawn's estate was prevented from having its complaint against Wyandot Specialty Healthcare decided on its merits. For that reason, the trial court did not abuse its discretion by dismissing Shawn's estate's wrongful-death action against Wyandot Specialty Healthcare.

**{¶40}** Shawn's estate's second assignment of error is overruled.

{¶41} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlr**